## Louisville & Nashville Railroad Company v. City of Covington, et al.

(Decided June 11, 1918.)

### Appeal from Kenton Circuit Court.

1. Railroads—Right to Lay Water Mains Under Streets—Statutory Provisions—Agreement Upon Terms—Rejection of Terms Pro-

posed by Railroad—Right to Proceed With Work—Injunction.—
Under Kentucky Statutes, section 768, subsection 5, authorizing
steam railroads to construct their roads upon or across any street
upon such terms as shall be agreed upon between the corporation
and the municipality, the municipality has a voice in fixing the
terms and conditions, and the corporation upon the mere re-
jection of its own terms and conditions can not proceed to lay its
water mains and enforce its right by enjoining the city authori-
ties from interfering with the work.

2.  Railroads—Right to Lay Water Mains Under Streets—Statutory
Provisions—Agreement     Upon     Terms—Mandamus—Mandatory
Injunction.—For the arbitrary refusal of the municipal authorities
to agree upon terms and conditions for laying water mains under
and across streets of the city, the only remedy of the city, if it
has one, is by mandamus or mandatory injunction to compel the
city authorities to exercise their discretion in good faith.

BENJAMIN D. WARFIELD and S. D. ROUSE for appellant.

A. E. STRICKLETT for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COM-
MISSIONER—Affirming.

The Louisville & Nashville Railroad Company
brought this suit to enjoin the city of Covington and its
mayor and commissioners from interfering with it in
laying a water main from a point on the Licking river,
on its own property, along its right of way and under
certain streets in the city of Covington. A demurrer was
sustained to the petition and the petition dismissed. The
railroad company appeals.

The allegations of the petition are in substance as
follows: Plaintiff is a trunk line railway and a common
carrier. In the maintenance and operation of its busi-
ness it maintains railway yards, machine shops, round
houses, etc., in the city of Covington and in Latonia,
which is a part of the city of Covington. It also main-
tains large yards with repair and machine shops at De-
Coursey, four miles south of Covington. In the opera-
tion of its railroad it is compelled to use great quanti-
ties of water and has no means of supplying itself with
water in the yards and shops at DeCoursey except by
a system constructed and maintained by itself. It is
now using in its yards and shops in the city of Coving-
ton and Latonia, water furnished by the city of Coving-
ton. The supply of water thus furnished has been
wholly inadequate, and at times the supply has been

entirely cut off by reason of the breaking down of the water system, and the work of operating its line of railway has been greatly interfered with. Plaintiff desires to construct, maintain and operate its own water system by constructing a pumping station on its own property at Licking river and laying pipes and mains from the pumping station along its own right of way to its shops in Covington, Latonia and at DeCoursey. To this end it is planned to lay water pipes to a depth of from eighteen inches to two feet under the surface of fourteen streets in the city of Covington. In crossing said streets it will do so with as little interruption to, and interference with, traffic as is possible and such interference will be of a brief and temporary character, and the surface of said streets will be restored to their original condition by the company. Theretofore plaintiff represented the foregoing facts to the city of Covington and its commissioners, and applied for leave to construct its water mains under the streets in question, but the city and its commissioners refused to grant it permission to do so upon the ground that plaintiff should not be permitted to furnish its own supply of water within the city of Covington, and for the further reason that they would not grant any privileges or permits of any sort to plaintiff. Said refusal on the part of the city of Covington and its commissioners was wanton, wilful and without justification. By reason of the great demand made upon it for transporting freight and passengers, it is compelled to own its own water system and is about to begin the laying of said mains along its right of way and across the streets in question. By reason of the refusal of the defendants to permit it to construct said system, plaintiff will suffer great and irreparable injury, and unless defendants are restrained, they will undertake, by force, to prevent plaintiff from constructing its water system and laying its mains in the manner proposed.

Sub-section 5, section 768, Kentucky Statutes, confers upon railroad companies the power:

"To construct its road upon or across any watercourse, private or plank road, highway, street, lane or alley, and across any railroad or canal; but the corporation shall restore the watercourse, private or plank road, highway, street, lane, alley, railroad or canal to its

former condition, as near as may be, and shall not obstruct the navigation of any stream, or obstruct any public highway or street, by cars or trains, for more than five minutes at any one time; and shall construct suitable road and street crossings for the passage of teams by putting down planks or other suitable material between and on each side of the rails, the top of which shall be at least as high as the top of the rails of such road or street; and in case the road is constructed upon any public street or alley, the same shall be upon such terms and conditions as shall be agreed upon between the corporation and the authorities of any city in which the same may be, but such road shall not be constructed upon any public street or alley until compensation shall be made by the corporation therefor to the owner of the property adjoining such street or alley, and opposite where such road is to be constructed, either by agreement or in the manner provided by law.''

The argument in behalf of the railroad company is as follows: The above statute not only confers the power to construct its road across any street of the city, but the incidental power to make any use of the street necessary for the successful operation of the road that will not interfere with the use of the street by others, and, therefore, the right to lay water mains underneath and across the streets for the purpose of supplying the water necessary for its shops, engines, and cars. That being true, the city may not arbitrarily refuse to grant the privilege, and if it does, the company may proceed with the work and enjoin the city and its officers from interfering therewith. It will be observed that the statute does not confer upon the railroad company the absolute right to construct its road upon or across any street, but the right to do so ''upon such terms and conditions as shall be agreed upon between the corporation and the authorities of any city.'' In other words the statute provides that the city shall have a voice in fixing the terms and conditions, and does not authorize the company to proceed with the work until the terms and conditions have in some way been agreed upon by the parties. That being true, the company, upon the mere rejection of its own terms and conditions, can not proceed to lay its water mains and enforce its right by enjoining the city authorities from interfering with the work.

But if it be conceded that the city may not arbitrarily refuse to agree upon terms and conditions, but is under the mandatory duty of agreeing upon reasonable terms and conditions, a question not decided, then the company's only remedy, if it has one, is by mandamus or mandatory injunction to compel the city authorities to exercise their discretion in good faith. It follows that the demurrer to the petition was properly sustained.

Judgment affirmed.